ALSON KNIGHT v. THE CONNECTICUT RIVER PETROLEUM COMPANY.

*Assumpsit. Contract. Custom. Notice.*

The following instrument:

"BOTHWELL, Nov. 18, 1866.

"In consideration of Four Hundred Dollars received of A. Knight, I promise to de-"liver to him, bearer, Two Hundred Barrels of Crude Oil at the Connecticut River "Oil Well in Bothwell, C. W., reserving the right to pay him twenty-five cents per "barrel, on payment of the four hundred dollars above mentioned; said oil to be "delivered any time within three months.

R. L. CROWELL, *Agent Conn. River Co.*"

it being the custom, known to Knight, for the purchaser to furnish bbls. for his oil at the well,—was *held* to be a note for two hundred barrels of oil, to be delivered at any time within three months, and to be taken in barrels to be furnished by the purchaser (the plaintiff) unless the promisor shall within the three months elect to pay four hundred and fifty dollars in money in lieu of the oil.

The plaintiff was not bound to furnish barrels without proper notice that the defendants had elected to pay in oil.

ACTION OF ASSUMPSIT. The case was referred. The referee reported substantially as follows:

The defendants, residing mostly in Windsor and Windham counties, were partners in the business of operating an oil well in Bothwell, Canada West, under the name of the Connecticut River Petroleum Company, during the year 1866, and until March 1867, during all which time R. L. Crowell was their agent, and resided at Bothwell. The plaintiff also resided at said Bothwell, and on

the 18th day of November, 1866, he lent to the defendants $400 in gold, and made the contract expressed in paper "A" hereto attached, as to the time and mode of payment.

At a meeting of the defendants in December, 1866, it was resolved to pay the obligation "A" in oil, and Crowell was directed to so notify the plaintiff. Crowell did not tell the plaintiff of this resolution of the defendants, but told him that he intended to pay him in oil, and that he had abundance of oil then on hand to do it with, but did not tell him in distinct terms that he or the defendants had elected to pay the obligation in oil, and that the oil was then ready for him at the well, and that he must furnish his casks and take it away. The plaintiff understood him to mean that it was his then purpose to pay him at some future time in oil.

On the 18th of November, 1866, oil was worth at the well $2.25 per bbl. December 26th, 1866, it was worth $2.00 per bbl. February 18th, 1867, oil at the well was worth $1.25 per bbl. From 18th December, 1866, to February 18th, 1867, greenbacks were at a discount of twenty cents on the dollar at said Bothwell.

It was the custom known to the plaintiff for purchasers of oil by the barrel to furnish their own casks. This was the custom at the defendants' well.

The plaintiff never furnished nor offered to furnish any casks to put the oil in, nor did the defendants ever ask him for any.

December 26th, 1866, the defendants had on hand at their well about 500 barrels of oil. In February, 1867, they ceased to operate their well, when Crowell left Bothwell, and gave the property of the defendants, including the above amount of oil, and the key of the tank house, in charge of one Bowen, who lived at Bothwell, with directions to him to deliver to the plaintiff 200 barrels of oil whenever he called for it and furnished casks to put it in.

In October, 1867, the plaintiff made a formal demand on the defendants for the payment of obligation A, in money, which was refused on the ground that they had tendered him oil in payment, December 26, 1866, within the terms of their contract. At the date of the contract it was expected by both parties that if the de-

fendants elected to pay the same in money, the payment was to be made at Bothwell, in gold, or its equivalent.

Between the month of February 1867, and the month of August 1868, the defendants' oil all, or nearly all, leaked out of their tanks, so that they had none to deliver to the plaintiff.

The referee found for the plaintiff to recover as follows:

| | |
|---|---:|
| For 200 bbls., | $250.00 |
| Interest thereon to September 12, 1871, | 68.50 |
| | $318.50 |
| Premium on gold, at 12 per cent., | 38.22 |
| | $356.72 |

### Contract A.

BOTHWELL, November 18th, 1866.

In consideration of Four Hundred Dollars received of A. Knight, I promise to deliver to him, bearer, two hundred barrels of crude oil at the Connecticut River Oil Well, in Bothwell, Canada West, reserving the right to pay him twenty-five cents per barrel on payment of the Four Hundred Dollars above mentioned; said oil to be delivered any time within three months.

R. L. CROWELL, *Agent Conn. River Co.*

January 26th, 1867, Agent Crowell wrote the letter to the plaintiff, hereto annexed marked No. 1, which was received by the plaintiff by due course of mail.

The defendants made no offer to pay the obligation "A" in oil, within three months of its date, unless what Crowell told the plaintiff, or the letter of January 26th, 1867, or both taken together, can be so construed.

### Letter No. 1.

BOTHWELL, Jan. 26, 1867.

FRIEND KNIGHT:

Dear Sir—Will you have your oil left in my tanks? I wish to sell the balance of it, and will leave as near as I can judge enough to fill your order. I sold 150 barrels the other day for $1.80,—that is much better than the London market, which amounts to about $1.25 at this station. We have made up our minds that we cannot live at present prices; there is but one well (the Gatling) that will pay expenses.

I remain, truly yours,              R. L. CROWELL.

The court at the September term, 1871, Ross, J., presiding, accepted the report of the referee, and rendered judgment thereon for the plaintiff to recover the sum of $356.72 and his costs.     Both parties excepted.

*Field and Tyler* for plaintiff cited *Way* v. *Wakefield*, 7 Vt., 223 ; *Wainwright* v. *Straw*, 15 Vt., 215 ; 2 Parsons on Contracts, 163 and notes ; *Perry* v. *Smith*, 22 Vt., 301 ; Sedgwick on Measure of Damages, 252 ; *Kent* v. *Bowker*, 38 Vt., 140.    The referee was right in adding the premium on gold, for both parties understood the contract was to be paid in gold or its equivalent.

*H. E. Stoughton*, for the defendants.

The opinion of the court was delivered by

WHEELER, J.    The custom known to the plaintiff and practised by the defendants, would govern in respect to furnishing barrels, the same as if the instrument had been made in express terms according to the custom.    The instrument, in connection with the custom, is construed to be a note for two hundred barrels of oil to be delivered at any time within three months, and to be taken in barrels to be furnished by the plaintiff, unless the defendants should choose to pay four hundred and fifty dollars in money, in lieu of the oil.    The defendants did not elect to pay in money, and at the expiration of the time it was due in oil.    The defendants had the whole time in which to elect whether they would pay in oil or money, and could pay either at any time during the whole time.    They had no right to expect that the plaintiff would furnish barrels without notice at any time before the expiration of the time, for if he should do so, they might elect to pay in money, and the barrels not be wanted at all, or if they should leave the note to be paid in oil, they might not choose to make payment till the end of the time for making it.    They had no right to expect him to furnish them at the expiration of the time, without notice that they should not pay in money, for they might elect then to pay in money and the barrels not be wanted.    They did inform him that they intended to pay in oil, but upon the facts found, did not go so far as to take away their right to pay in

money, if they had chosen to do so afterward, and therefore did not go far enough to require the plaintiff to furnish the barrels without some further notice. The plaintiff was not in fault in not furnishing barrels under the circumstances, and the defendants were left with the obligation to deliver the oil according to the note. They could do that by delivering it to the plaintiff to his acceptance, or by setting it apart for him at the time and place of payment. They did not do either. Upon this failure of theirs the plaintiff became entitled to the value of the oil. The county court rendered judgment for that value. Judgment affirmed.